# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

MARK C. JACKSON,

      Plaintiff,

vs.                        CASE NO. 3:08-cv-461-J-34TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security

      Defendant.

_____

## REPORT AND RECOMMENDATION [1]

      This case is before the undersigned for a report and recommendation on its disposition.  Currently pending before the Court are a number of non-dispositive and dispositive motions.  The Court will address each matter in turn.

## General Background of the Case

      On May 6, 2008, Plaintiff, proceeding *pro se*, filed a complaint against Michael J. Astrue, as the Commissioner of Social Security, and the State of Florida.  Plaintiff asserted four distinct claims in the complaint (*see generally*, Doc. #1, complaint).  First, Plaintiff alleged that two administrative law judges abused their discretion and committed fraud when they rejected his claims for Social Security disability benefits (*see* Doc. #1 at 7-8).  Second, Plaintiff alleged that the Veteran's Administration (VA)[2] and the Social Security

_____

[1]Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 (b)(2); Local Rule 6.02(a), United States District Court for the Middle District of Florida.

[2]The Court notes the Veterans Administration has not been a party to this suit at any time.

Administration (SSA) conspired to postpone his career in retaliation for his assertion of due process rights in Traffic Court, or to reduce agency liability (Doc. #1 at 8). Third, Plaintiff alleged that the VA, the SSA, and other government agencies, acting together, deprived him of his right to acquire useful knowledge (Doc. #1 at 8-9). Lastly, Plaintiff claimed that the SSA, the State of Florida, and other government agencies maliciously caused him to breach an apartment rental contract (Doc. #1 at 9).

In response to the complaint, the State of Florida filed a motion to dismiss (*see* Doc. #11, Defendant State of Florida's Motion to Dismiss) and Defendant Astrue moved for dismissal, or alternatively, for summary judgment (*see* Doc. #19, Defendant Astrue's Motion to Dismiss or, in the Alternative, for Summary Judgment). Plaintiff filed memoranda in opposition to both Defendants' motions (*see* Doc. #13, Plaintiff's Motion in Opposition to Defendant State of Florida's Motion to Dismiss; Doc. #22, Plaintiff's Motion in Opposition to Defendant Astrue's Motion to Dismiss or, in the Alternative, for Summary Judgment). Additionally, Plaintiff filed a motion in which he requested partial summary judgment regarding his Social Security disability claims (*see* Doc. #25, Plaintiff's Motion to Reconsider Order of this Court Dated the 15th Day of September 2008 Denying Temporary Restraining Order for Procedural Defect (Doc #23) with Incorporated Memorandum of Law). Defendant Astrue filed a response in opposition to Plaintiff's request for partial summary judgment (*see generally*, Doc. #27).

Upon referral of these motions, the undersigned prepared reports and recommendations as to each motion (*see* Docs. #36, #38, #39). The undersigned found Plaintiff had not met the burden of proof for summary judgment, and recommended the

request for partial summary judgment be denied (Doc. #39).   The undersigned recommended the case against the State of Florida's  be dismissed in its entirety and the case against the Commissioner of Social Security be dismissed as to Counts I, II, III and IV of the complaint (*see* Doc. #36, Doc. #38).   The undersigned further recommended, under the liberal construction of pleadings that is afforded *pro se* litigants, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the complaint be construed to seek review of two decisions of the Commissioner of Social Security that denied Plaintiff's claims for disability benefits (Doc. #38 at 12).  If the District Court accepted this construction of the complaint, the undersigned also recommended the District Court dismiss the Social Security appeal as to the December 28, 2000 decision as untimely, but permit the appeal of the May 17, 2007 decision to go forward (*see* Doc. #38 at 12-15).   The District Court adopted the reports and recommendations as the opinion of the Court and dismissed the claims against each Defendant as suggested.

Thus, the only claim remaining in this action is the construed appeal of the May 17, 2007 decision of the Commissioner of Social Security that denied Plaintiff's administrative claims for disability benefits.

### I. Plaintiff's Motion for Partial Summary Judgment

Plaintiff's original complaint remains the operative pleading in this case.   In furtherance of his claims for disability insurance benefits and supplemental security income disability payments, Plaintiff filed a second motion for partial summary judgment (Doc. #66) on December 14, 2009, and a memorandum of law in support thereof (Doc. #69) on

January 5, 2010.[3]  Plaintiff states he is entitled to judgment as a matter of law and there

is no genuine issue of material fact in this case regarding his Social Security claims (Doc.

#66).  Plaintiff asserts that any reasonable mind would see that his condition meets the

criteria set forth in the Listing of Impairments[4] and he alleges a number of "facts" to support

of this conclusion (Doc. #69 at 3).   Among the alleged facts, Plaintiff states there are

medical signs and laboratory findings showing "joint space narrowing," the words

degenerative joint disease are found throughout his medical records, he is morbidly obese

and was wheelchair bound after surgery, the hardware from his ankle surgery made it

impossible for him to walk on uneven ground at a reasonable pace, and if the VA had not

postponed drawing up a vocational rehabilitation plan he would have been collecting Social

Security while participating in the VA vocational rehab plan (Doc. #69 at 3-4).  Plaintiff

states his Social Security benefits should be awarded and the damages listed in the

complaint should be awarded (Doc. #69 at 4).

---

[3]As noted *supra*, *see* General Background of the Case, Plaintiff earlier requested
summary judgment against Defendant Michael Astrue as the Commissioner of Social
Security (*see* Doc. #23), to which Defendant responded in opposition (*see* Doc. #27).  The
District Court adopted the recommendation of the undersigned that Plaintiff's construed
motion for partial summary judgment be denied (*see* Doc. #39, R&R; Doc. #62, Court
Order).

[4]The Listing of Impairments (the Listings) is in Appendix 1 of 20 C.F.R. Pt. 404 Subpt. P.
It describes impairments for each of the major body systems that the Commissioner
considers to be severe enough to prevent an individual from doing any gainful activity,
regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525(a).  The
specific listings follow the introduction in each body system, after the heading "Category
of Impairments." Within each listing, the objective medical and other findings needed to
satisfy the criteria of that listing are specified.  An  impairment meets the requirements of
a listing when it satisfies all of the criteria of that listing, including any relevant criteria in
the introduction, and meets the duration requirement. 20 C.F.R. § 404.1525 (c)(3).

In response to Plaintiff's motion for partial summary judgment, and in accordance with the scheduling order of this Court, Defendant timely filed a memorandum of law in support of the Commissioner's decision to deny Plaintiff's claims for disability benefits (Doc. #71, hereinafter D's Brief) on March 5, 2010.   Defendant asserts substantial evidence supports the finding of the administrative law judge (ALJ) that Plaintiff's condition does not meet or equal a listed impairment (*see generally*, D's Brief).   Implicit in Defendant's argument is that genuine issues of material fact are in dispute in this construed appeal of the May 17, 2007 decision to deny Plaintiff's disability claims.   In support of the Commissioner's position, Defendant has filed the transcript of the underlying administrative proceedings, which includes, among other things, the transcript of the relevant administrative hearing, the medical evidence of record, documents developed in the progress of the disability case, and a significant amount of correspondence from Plaintiff in which he states his position concerning the applications for disability benefits.

Summary judgment shall be granted for the moving party only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A court looks to "the pleadings, the discovery and disclosure materials on file, and any affidavits," in determining whether summary judgment is appropriate.  *Id.*  The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hairston v. Gainesville Sun Publ. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).  Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477

U.S. at 324; *see also Howard v. BP Oil Co. Inc.*, 32 F.3d 520. 524 (11th Cir. 1994) *citing to Celotex*, 477 U.S. at 324.[5]

The only determination for the court in a summary judgment proceeding is to determine whether there exists genuine and material issues of fact to be tried. *Hairston*, 9 F.3d at 921. Furthermore, all the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Howard v. BP Oil Co. Inc.,* 32 F.3d at 524.

In considering Plaintiff's Motion for Partial Summary Judgment (Doc. #66), the supporting memorandum (Doc. #69), the response thereto (Doc. #71), and having reviewed the record as a whole, the Court finds Plaintiff has not met the burden of proof for summary judgment. Plaintiff has not presented evidence to support a finding for judgment as a matter of law. Plaintiff's argument in support of summary judgment is a set of asserted facts that are only partially corroborated by the record and a collection of conclusory statements without factual support. *See discussion infra*, The May 17, 2007 Social Security Disability Appeal. Accordingly, it is respectfully recommended that Plaintiff's motion seeking summary judgment as to his Social Security disability claims (Doc. #66) be **DENIED** and the record of the underlying administrative proceedings be reviewed in accordance with 42 U.S.C. § 405(g).

_____

[5]In litigation appealing a final decision of the Commissioner of Social Security, the Court's review is strictly limited by statute. *See* 42 U.S.C. § 405(g). There is no trial *de novo. Lippert v. Ribicoff* 215 F.Supp. 28, 30 (D.C. Cal. 1963). The Court has jurisdiction to "review" the decision of the Commissioner and "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." *Id.*

## II. Plaintiff's Motion for [Sentence 6] Remand

On May 12, 2010, Plaintiff's Motion to Admit New and Material Evidence and Remand (Doc. #80, Motion to Remand) was filed.  Plaintiff requests the Court order remand of the case so that "new and material evidence can be taken to the Commissioner of Social Security and the Commissioner can modify the current unfavorable decision to a favorable decision in accordance with law. . ." (Doc. #80 at 2).  Plaintiff also asks, among other things, that the Court to set a time limit for the Commissioner to act during the sought remand and to find the Commissioner in default if he "violates this time table" (Doc. #80 at 2).   In support of his request to remand the case, Plaintiff attached correspondence from the Department of Veterans Affairs, North Florida/South Georgia Veterans Health System that contains the results of a May 4, 2010 MRI test of Plaintiff's right foot,[6] which Plaintiff maintains "revealed the surgical arthrodesis of October 10, 2003 has failed" (Doc. #80 at 1).

Defendant responded in opposition to the motion (Doc. #84), stating a remand based on the submitted evidence is not warranted because the evidence is not material to the case at hand.

In order to justify a remand for consideration of new evidence in the Eleventh Circuit, Plaintiff must show: (1) there is new, non-cumulative evidence; (2) the evidence is material, in that it is relevant and probative so there is a reasonable possibility that it

---

[6]Although Plaintiff asserts this evidence pertains to a MRI of his foot, the Court notes the correspondence refers specifically to Plaintiff's right ankle (*see* Doc. #80 at 4). This distinction, however, is insignificant.  Plaintiff's claims for Social Security disability benefits arise out of injury to, and surgery of, Plaintiff's right foot and ankle as a lower right extremity weight bearing joint.

would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (citing *Cherry v. Heckler*, 760 F.2d 1186, 1192-94 (11th Cir. 1985)).  Review of the evidence submitted with Plaintiff's Motion to Remand reveals Plaintiff does not meet the standard for evidence that is material to this construed appeal.

In a general sense, Plaintiff correctly states the submitted evidence is new and non-cumulative.  In the Eleventh Circuit, new evidence is evidence not previously before the ALJ. *See Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).  In *Sherrod v. Chater*, the court indicated that only evidence unavailable at the administrative level is deemed to be new evidence under the *Cherry* standard. 74 F.3d 243, 246 (11th Cir. 1996).  However, as interpretation of this standard developed, the Eleventh Circuit further determined that "[n]ew evidence must relate to the time period on or before the date of the ALJ decision." *Archer v. Comm'r of Social Security*, 176 Fed. Appx. 80, 82 (11th Cir. 2006) (per curiam) (citing to 20 C.F.R. § 404.970(b) and *Falge v. Apfel*, 150 F.3d 1320,1324 (11th Cir. 1998)).[7]

Defendant argues that the MRI findings submitted by Plaintiff do not relate back to the relevant period because the test was performed almost three years after the ALJ's decision (Doc. #84 at 2).  The Court agrees.  In a somewhat analogous circumstance, the plaintiff in *Archer* submitted medical reports, including results of a MRI that post-dated the ALJ's hearing by twenty-one months, to the Appeals Council for review. *Archer v. Comm'r*

---

[7]Unpublished opinions may be cited throughout this order as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

*of Social Security*, 176 Fed. Appx. at 81.   On appeal to the Eleventh Circuit, the plaintiff challenged that the district court should have remanded the case for consideration of her new evidence.   *Id.*   The court disagreed and found the additional evidence did not relate to the time period before the ALJ's decision and was not material as it was unlikely to change the outcome.   *Id.*

Here, Defendant further submits that the MRI results are not material to the case before the Court because those results could not change the outcome of the ALJ's determination (Doc. #84 at 2-4).   Plaintiff claims the MRI results show that his "foot is in a perpetual state of being broken, which gives credibility that [he] cannot walk a block on uneven ground at a reasonable pace" (Doc. #80 at 1).   The Court surmises Plaintiff draws his conclusions from the sentence in the VA's correspondence that states, "The talonavicular joint does not appear completely fused." (Doc. #80 at 4.)   However, the Court does not agree with Plaintiff's conclusions.   Although Plaintiff may believe otherwise, the impression of Dr. Mount in reporting the MRI results actually states that no acute findings were identified (Doc. #80 at 4).   While the "new" evidence may indicate a deterioration or a change in Plaintiff's condition, it is simply not probative of any issue in this case. Contrary to Plaintiff's assertion, the reported MRI results to not indicate the "surgical arthrodesis of October 10, 2003 has failed" (*see* Doc. #80 at 1).   Nothing in the VA's correspondence suggests the outcome of the ALJ's decision would be changed with consideration of this additional evidence.

Thus, the undersigned concludes Plaintiff has failed to meet his burden of proof that the submitted MRI results constitute new and material evidence to require a remand of this

case to the Commissioner of Social Security so that the Commissioner may make further findings after considering the additional evidence. It is respectfully recommended Plaintiff's Motion to Admit New and Material Evidence and Remand (Doc. #80) be **DENIED** and the record of the underlying administrative proceedings be reviewed in accordance with 42 U.S.C. § 405(g).

### III. The May 17, 2007 Social Security Disability Appeal

As noted above, *see supra* <u>General Background of the Case</u>, this case remains pending before the Court in light of the liberal construction given to Plaintiff's *pro se* complaint. The issue before the Court is whether the May 17, 2007 decision of the Commissioner of Social Security, which denied Plaintiff's February 9, 2005 applications for disability insurance benefits (DIB) and supplemental security income (SSI) disability payments, is supported by substantial evidence. *See* 42 U.S.C. § 405(g).

The Commissioner has filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). Plaintiff, proceeding *pro se*, filed a legal brief in opposition to the Commissioner's decision and in support of his quest for summary judgment (*see* Doc. #69, P's Brief).[8] In the complaint, Plaintiff specifically refers to Listings 1.02 and 1.03 in claiming he was fraudulently denied his applications for disability benefits (*see* Doc. #1 at 2). Plaintiff asserts he is entitled to

---

[8]In addition to Plaintiff's Brief (Doc. #69), the Court, of course, has reviewed and given due consideration to all of Plaintiff's filings in this case, as well as the information provided by Plaintiff to the Social Security Administration as contained in the transcript record of the underlying proceedings. Most particularly, the Court notes Plaintiff's correspondence and briefing directed to the SSA on April 28, 2005 (Tr. 143-52), Plaintiff's Remarks section directed to the SSA on November 16, 2005 (Tr. 162-63), Plaintiff's Notice of Waiver, Statement of the Case, and Memorandum of Law dated February 5, 2007 (Tr. 170-84) reflect Plaintiff's position in the case, as do the documents filed in the instant action.

payment of disability benefits from the SSA because he meets a listing at step three of the five step sequential evaluation process (*see* Doc. #1 at 2, 7-8; *also see*, Doc. #69 at 4 *and* Tr. 31). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #19, D's Brief). The parties did not consent to the exercise of jurisdiction by a magistrate judge and the case has been referred to the undersigned for a report and recommendation.

The Court has reviewed the record and has given it due consideration in its entirety, including the arguments presented by the parties in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record.

*Procedural History*

Plaintiff protectively filed the current applications for DIB and SSI disability payments on January 28, 2005 (Tr. 15).[9] Plaintiff completed the online applications for DIB and SSI on February 9, 2005, alleging an onset of disability of June 2, 2001 (Tr. 75-77, 486-88).[10] Plaintiff's applications were denied initially and upon reconsideration (Tr. 51-53,

_____

[9]The Court is unable to locate the "Leads/Protective Filing worksheet" for the January 28, 2005 protective filing in the record. Such omission is harmless error.

[10]As further background, the Court notes Plaintiff has filed a number of previous applications for disability benefits. An application was filed on November 12, 1999, alleging a closed period of disability from July 4, 1996 through July 21, 1997 (*see* Doc. #1-2). Plaintiff attended and testified at the administrative hearing for that claim in State College, Pennsylvania on September 22, 2000 (Doc. #1-2 at 5). The ALJ's decision denying that application was issued on December 28, 2000 (Doc. #1-2 at 2, 11). Plaintiff
(continued...)

63-65, 489-93).  Thereafter, Plaintiff timely requested a hearing, which was ultimately held by video in Ocala, Florida before administrative law judge (ALJ) Philemina M. Jones on February 27, 2007 (Tr. 494-99).  Plaintiff, who proceeded *pro se* and elected not to appear at the hearing, filed a document entitled "Notice of Waiver of Oral Hearing and Acknowledgement [sic] of Receipt of Notice of Hearing" on February 5, 2007 (Tr. 170-71, Notice of Waiver).  Plaintiff attached his Statement of the Case and his Memorandum of Law in support of his position to the Notice of Waiver (*see* Tr. 172-84).  As was previously arranged, vocational expert (VE) Susanna Roche testified at the hearing via video from Orlando, Florida.  On May 17, 2007, the ALJ issued a hearing decision denying Plaintiff's claims for DIB and SSI payments (Tr. 12-22).

Plaintiff requested review of the hearing decision by the Appeals Council (AC); however, the AC denied Plaintiff's request on April 18, 2008 (Tr. 4-7), making the hearing decision the final decision of the Commissioner.  Thereafter, Plaintiff filed the instant complaint in federal court on May 6, 2008 (Doc. #1).

## Social Security Act Eligibility, the ALJ Decision, and the Standard of Review

A claimant may be entitled to disability benefits if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period

---

[10](...continued)
protectively filed for DIB and SSI on November 7, 2002, alleging a disability onset date of October 24, 2002 (Tr. 85; *see also* Doc. #1 at 4, wherein Plaintiff claims he attempted to reopen his 1996 Social Security claim on November 14, 2002).  The record indicates that claim was denied on April 23, 2003, reconsideration forms were mailed to Plaintiff on May 5, 2003, but Plaintiff did not complete and return the reconsideration forms (Tr. 62).

of not less than twelve months.   20 C.F.R. § 404.1505.[11]   The Commissioner has

established a five-step sequential evaluation process for determining whether a claimant

is disabled and therefore entitled to benefits.   *See* 20 C.F.R. § 404.1520.   The claimant

bears the burden of persuasion through step four, while at step five the burden shifts to the

Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   For purposes of

determining whether a claimant is disabled, the law and regulations governing a claim for

disability benefits are identical to those governing a claim for supplemental security income

benefits.   *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

The ALJ found Plaintiff met the Social Security Act's insured status requirements

through December 31, 2006 (Tr. 15, 17; *see also* Tr. 68).   At step one of the sequential

evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity

since the alleged onset date of June 2, 2001 (Tr. 17).   At step two, the ALJ found Plaintiff

had a "severe combination of impairments," which the ALJ identified as comprised of

"osteoarthritis, degenerative joint disease, status post right foot fusion surgery with

removal of hardware, right knee sprain, an affective disorder and a personality disorder"

(Tr. 17).   At step three, the ALJ determined Plaintiff did not have an impairment or

combination of impairments that met or medically equaled any of the listed impairments

in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18).

The ALJ assessed Plaintiff retained the residual functional capacity (RFC) to "lift 10

pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour workday,

---

[11]Unless otherwise specified, all references to 20 C.F.R. will be to the 2010 edition.   As
the Regulations for SSI disability payments mirror those set forth for DIB on the matters
presented in this case, from this point forward the Court may refer only to those sections
in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

and stand/walk for two hours in an eight-hour work day.  He can occasionally climb, crouch and crawl.  The claimant's affective disorder and personality disorder have imposed mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace[,] without repeated episodes of decompensation.  He is able to perform simple, routine, repetitive work.  He should avoid working with the general public." (Tr. 19.)

At step four, the ALJ determined Plaintiff could not return to his past relevant work (PRW) as an aviation electrician, a senior technician, a cable television line technician, or as a field service representative (Tr. 21).  However, at step five, based in part on the VE's testimony, the ALJ determined that, "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform" (Tr. 21).  Thus, the ALJ found Plaintiff was not under a disability within the meaning of the Social Security Act at any time from Plaintiff's alleged onset date of June 2, 2001 through the date of her decision (Tr. 22).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of facts are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a scintilla, but less than a preponderance.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The evidence must do more than merely create a suspicion of the

existence of a fact; it must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Id.*

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that Plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

As in all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen v. Yuckert*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence

15

thereof as the Commissioner of Social Security may require.").  The plaintiff must provide

the relevant medical and other evidence that he or she believes will prove the existence

of disabling physical or mental functional impairments.  20 C.F.R. § 404.704.

*Background and Analysis*

Plaintiff, who was born October 3, 1971 (Tr. 75), was thirty-five years old at the time

of the administrative hearing.  Plaintiff completed high school and three years of college

(Tr. 98).  Plaintiff is a veteran of the armed services, having served in the Navy from July

1989 through July 1993 (Tr. 73; *also see* Tr. 249-50).  Plaintiff indicated on his Disability

Report - Adult that his ability to work was limited due to arthritis in his right foot and

associated knee injury, plus a crushed left hand reconstructed with surgery (Tr. 92, 124).

On his Disability Report - Appeal, Plaintiff indicated he did not have any new physical or

mental limitations since his last disability report (Tr. 153), but he set forth in narrative form

his position of the case and his insistence that he is automatically qualified for disability or

SSI because he meets a listing on the Listing of Impairments under the Musculoskeletal

System (Tr. 159-60).

Essentially, Plaintiff raises two issues on appeal.  The first issue is whether the ALJ

erred in failing to find Plaintiff presumptively disabled at step three of the five step

evaluation process (P's Brief at 1).  Plaintiff vehemently asserts he meets Listings 1.02 and

1.03 on the Listing of Impairments (*see* Doc. #1 at 2, 7, 8; *also see generally*, P's Brief).[12]

---

[12]The Court notes Plaintiff's Motion to Reconsider Order Document 62 and Motion to Expedite Payment of Social Security Benefits with Incorporated Memorandum of Law (Doc. #93), filed October 12, 2010, also touches on this same issue.  The Court's discussion regarding this motion can be found *infra*, in the section entitled Plaintiff's Motion to Reconsider and for Payment of Social Security Benefits.

The second issue is whether the denial of Social Security disability benefits "was used to deny [Plaintiff] the acquisition of useful knowledge or deprive [Plaintiff] of [his] liberty" (P's Brief at 2).

Defendant argues that substantial evidence supports the Commissioner's final decision in general, and supports the ALJ's finding that Plaintiff's condition does not meet or equal a listed impairment (*see generally*, D's Brief). In a footnote, the Commissioner recognizes Plaintiff's statement of the second issue pertaining to his liberty interest, but declares that issue has been decided already by the Court (D's Brief at 4 n.3).

With regard to Plaintiff's second asserted issue, Defendant is correct. The undersigned set forth a lengthy and detailed analysis of Plaintiff's claimed deprivation of a liberty interest in the report and recommendation addressing Defendant Astrue's Motion to Dismiss, or, in the Alternative, for Summary Judgment (*see* Doc. #38 at 6-8, 10-11). The Court declines to reiterate its earlier analysis and discussion. The District Court adopted the referenced report and recommendation and dismissed all counts in Plaintiff's complaint against the Commissioner of Social Security, except for the construed appeal seeking judicial review of the May 17, 2007 decision that found Plaintiff was not disabled under the Social Security Act (*see* Doc. #62).

Plaintiff's attempt to resurrect this issue pertaining to a liberty interest, couched in terms of an interference with Plaintiff's right to acquire knowledge, fails. In summary fashion, Plaintiff has merely restated the same issue previously raised in the complaint and dismissed by the Court. Plaintiff has not alleged any new facts. The facts stated in Plaintiff's complaint do not support a claim that Defendant has deprived Plaintiff of his right

17

to acquire useful knowledge.  To the extent Plaintiff asserts the Commissioner of Social Security has deprived him of the acquisition of useful knowledge or of a liberty interest, Plaintiff's assertions are without merit.

Upon close review of the ALJ's decision and the record evidence, the undersigned finds Plaintiff's claim that he meets one or more listings under the Musculoskeletal System and must be found disabled at step three of the evaluation process, is also without merit. The ALJ's decision reflects her finding that Plaintiff had a severe combination of impairments and that she then proceeded with the other steps of the sequential evaluation process (Tr. 17-22).  In determining whether an individual's physical or mental impairments are of sufficient severity to establish disability under the Regulations, the ALJ is required to consider all of the individual's impairments regardless of whether each impairment on its own is found to be severe.  20 C.F.R. § 404.1523.  The ALJ's decision demonstrates that she did consider Plaintiff's impairments individually and in combination (Tr. 18).  The Eleventh Circuit has held  that where "a claimant has alleged a multitude of impairments, a claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling."  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

Here, the ALJ found only the *combination of impairments* was severe (Tr. 17) (emphasis added), and expressly stated that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR [sic] Part 404, Subpart P, Appendix 1" (Tr. 18).   In making this finding, the ALJ extensively discussed the medical evidence of record, including Plaintiff's complaints of

18

right foot pain and left hand pain (*see* Tr. 18-19).  The ALJ then proceeded to assess Plaintiff's residual functional capacity and his ability to return to past relevant work or perform other work under steps four and five.

An ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Statements of the ALJ may make clear that she has considered the impairments in combination.  *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986); *accord, Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (finding that a claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" indicates proper consideration of impairments in combination).

Here, the ALJ listed Plaintiff's severe combination of impairments, thoroughly discussed the medical evidence, and then concluded that Plaintiff was not disabled under the Social Security Act (Tr. 17-22).  Thus, under *Wheeler* and *Jones*, it is clear from the ALJ's analysis and wording that she was aware of all Plaintiff's impairments and considered them in combination as required under 42 U.S.C. § 423(d)(2)(B) and 20 C.F.R. §§ 404.1522, 404.1523.

Plaintiff bears the burden of proving he is disabled.  20 C.F.R. § 404.1512(a)- (c); *Lucas v. Sullivan,* 918 F.2d 1567, 1571 (11th Cir. 1990).  A claimant may satisfy his burden of proving disability if he shows that his impairment or impairments meet or equal a listed impairment.  *Lucas v. Sullivan*, 918 F.2d at 1571.  "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting

that the conditions meet the specific criteria of the Listings and the duration requirement."

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  The evidentiary standards for

presumptive disability under the Listings are stricter than for cases that proceed to other

steps in the sequential evaluation process because the Listings represent an automatic

screening in based on medical findings rather than an individual judgment based on all

relevant factors in a claimant's claim.  *See* 20 C.F.R. § 404.1520(d); *also see Wilson v.*

*Barnhart*, 284 F.3d at 1224 ("The Listing of Impairments describes, for each of the major

body systems, impairments which are considered severe enough to prevent a person from

doing any gainful activity.").   As the U.S. Supreme Court stated in the case of *Sullivan v.*

*Zebley*, "For a claimant to show that his impairment matches a listing, it must meet all of

the specified medical criteria. An impairment that manifests only some of those criteria, no

matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Plaintiff contends various evidence in the record, including certain medical tests,

procedures, and progress notes support finding his impairments meet one or more listings

(*see* P's Brief at 3-4).  Plaintiff specifically refers to Listing 1.02 and Listing 1.03 (Doc. #1

at 2) as the listings pertinent to his condition.  Defendant does not contest that Listing 1.02

and Listing 1.03 are the only relevant listings (*see* D's Brief at 5).  Under the Category of

Impairments, Musculoskeletal, Listing 1.02 pertains to a major dysfunction of joints due to

any cause,[13] and Listing 1.03 pertains to reconstructive surgery or surgical arthrodesis of

_____

[13]In its entirety, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02 states:

    Major dysfunction of a joint(s) (due to any cause): Characterized by
gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous
ankylosis, instability) and chronic joint pain and stiffness with signs of
limitation of motion or other abnormal motion of the affected joint(s), and

(continued...)

a major weight bearing joint, with an inability to ambulate effectively.  20 C.F.R. Pt. 404,

Subpt. P, App. 1, §§ 1.02, 1.03.  Defendant correctly goes further to refine which sub-

category of impairments pertain to Plaintiff's condition.   Listing 1.02A deals with

involvement of "one major peripheral weight-bearing joint (i.e., hip, knee, or ankle),

resulting in inability to ambulate effectively, as defined in 1.00B2b."  *See id.*  Listing 1.02B

pertains to involvement of "one major peripheral joint **in each upper extremity** (i.e.,

shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements

effectively, as defined in 1.00B2c."  *See id.* (emphasis added).[14]  Thus, Plaintiff's condition

can only possibly meet the specific requirements of  Listing 1.02A and/or Listing 1.03.[15]

_____

[13](...continued)
>     findings on appropriate medically acceptable imaging of joint space
>     narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>     A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee,
>     or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>     or
>     B. Involvement of one major peripheral joint in each upper extremity (i.e.,
>     shoulder, elbow, or wrist-hand), resulting in inability to perform fine and
>     gross movements effectively, as defined in 1.00B2c.

[14]Although Plaintiff claims an impairment with regard to the third metacarpal digit on his left hand (*see* Doc. #1 at 7; Tr. 143, 162), this sub-section in the Listings does not apply to Plaintiff's condition.  A plain reading of Listing 1.02B sets forth the requirement that each upper extremity must be involved.  Furthermore, Section 1.00B2c states, "[the] [i]nability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities. . . ."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2c.

[15]In its entirety, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.03 states:  Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

An inability to ambulate effectively is a key component to both Listing 1.02A and Listing 1.03. Section 1.00B2b defines what is meant by the inability to ambulate effectively as:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as **having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.**

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b (emphasis added). As with any impairment, the inability to ambulate effectively must have lasted or be expected to last at least twelve (12) months. *See id.; see also* 20 C.F.R. § 404.1505.

The burden of proof to establish the applicability of any particular listing to a claimant's condition is upon the claimant. *Lucas v. Sullivan*, 918 F.2d at 1571. Here, Plaintiff has not met that burden. A close review of the medical evidence of record, which is expansive, reveals there is no continuous twelve month period within which Plaintiff was unable to effectively ambulate, as defined by the Regulations (*see* Tr. 185-87, 189-90,195-97, 210, 212-16, 217-448, 449-52). Noting Plaintiff's medical reports do not demonstrate Plaintiff's condition meets this criteria, the Court need not look further. As stated above, a claimant must meet all of the specified criteria of a listing in order to demonstrate presumptive disability under that listing. *Sullivan v. Zebley*, 493 U.S. at 530. There is no error in the ALJ's determination that Plaintiff's impairments did not meet any of the listed impairments in Appendix 1.

Moreover, the record does not support a finding that Plaintiff's condition equals a listing.  "To equal a listing, the medical findings must be at least equal in severity and duration to the listed findings." *Wilson v. Barnhart*, 284 F.3d at 1224.  The medical findings in this case demonstrate that Plaintiff had a foot injury in 1996 that eventually led to major dysfunction of his right ankle and foot from the surgery that occurred on October 10, 2003 (*see* Tr. 383-403).  Just over a month after surgery, on November 17, 2003, Plaintiff's cast was removed,  he was placed in a CAM walker,[16] and was advised he could engage in "weight bearing as tolerated" (Tr. 371).  On March 30, 2004, Plaintiff reported to his doctor that he was doing fine and no longer needed crutches, whereupon Plaintiff was given training on the use of a standard cane and his physician reported that Plaintiff's gait was more stable with the assistive device and he was "independent and safe" with the use of the cane (Tr. 366).  On June 17, 2004, Plaintiff complained of pain at the sight of his foot hardware that had not changed since April of 2004 (Tr. 358).  On that visit, Plaintiff's treating physician, Dr. Katherine A. Banull, M.D., set up the plan to remove the hardware in October or November 2004, "reinforced use of supportive shoes," and advised Plaintiff to use over the counter pain medication and ice for the foot pain (Tr. 358).  There is no reference in the record to Plaintiff's use of any assistive device from April 2004 through the date of his hardware removal surgery on October 13, 2004 (*see* Tr. 346-66).  Plaintiff was discharged to home without accompanying durable medical equipment on October 14, 2004 (Tr. 306-21).  On Plaintiff's four week follow-up, the right foot wounds had healed,

---

[16]A "CAM walker" is a restrictive boot worn by patients recovering from severe ankle sprains, soft-tissue injuries, and fractures of the lower leg. Cam Walker Definition, eHow.com, http://www.ehow.com/facts_5627712_cam-walker-definition.html (last visited Feb. 1, 2011). "CAM" is an acronym for Controlled Ankle Motion. *Id.*

no problems were reported and Plaintiff was instructed to continue ambulation as tolerated (Tr. 301-02).   No additional notation of problems with Plaintiff's right foot or right ankle appears throughout the progress notes from the North Florida/South Georgia Veterans Health System until Plaintiff complained of residual ankle numbness on July 12, 2005 (*see* Tr. 294-300).   At Plaintiff's May 29, 2005 consultative physical examination, Plaintiff was found able to walk on toes and heels, his tandem walk was normal, and he did not use any assistive device (Tr. 212-16).

In sum, Plaintiff has not provided any medical records that demonstrate his condition is equal in severity to the requirement that his impairment causes an inability to ambulate effectively.   There is no error in the ALJ's finding Plaintiff's condition did not equal a listed impairment.   *See, e.g., Arrington v. Social Security Admin.*, 358 Fed.Appx. 89 (11th Cir. 2002) (in which the court found medical records demonstrating the plaintiff had a normal gait, had a symmetric gait on level ground, could walk without the use of an assistive device, and could rise on heels and toes and semi-squat, were substantial evidence the plaintiff did not meet or equal Listing 1.03).

Upon finding Plaintiff Jackson's condition did not meet or equal a listing in Appendix 1, the ALJ correctly proceeded to evaluate Plaintiff's claims of disability through the fourth and fifth steps of the sequential evaluation process.   ALJ Jones found Plaintiff could not return to his past relevant work as an aviation electrician, a senior technician, a cable television line technician or a field service representative because those jobs required light

to medium exertional demands and Plaintiff's residual functional capacity placed his exertional ability within the sedentary category (*see* Tr. 21).[17]

Using the "medical-vocational rules"[18] as a framework, and the testimony of the vocational expert from the administrative hearing, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform with his limitations (Tr. 21-22).   Examples of those jobs were identified as surveillance system monitor, lampshade assembler, and touch-up screener/printed circuit board assembly. Plaintiff has not challenged the residual functional capacity assessment or the identified jobs.   Review of the job descriptions for each of these positions as set forth in the  United States Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991), reveals the identified jobs fall within Plaintiff's residual functional capacity.  Thus, the undersigned finds substantial evidence supports the ALJ's determination that Plaintiff can perform  jobs that

---

[17]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally (approximately 2 hours of an 8-hour workday) and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

[18]The Medical-Vocational Guidelines, also known as the Grids, are a series of rules which use a matrix of a claimant's RFC for sedentary, light, medium or heavy work and the claimant's vocational profile of his age, education and past relevant work, to direct a conclusion on the issue of whether the claimant is capable of substantial gainful activity in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00; *Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983).  Only when the assessed RFC is for a full range of work and there are no non-exertional  limitations to further diminish a claimant's ability to perform work at a given exertional level, may the ALJ rely exclusively on the Grids. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985); *Holley v. Chater*, 931 F.Supp. 840, 851 (S.D. Fla. 1996).

exist in significant numbers in the national economy and is not disabled within the meaning of the Social Security Act.

*Conclusion*

Accordingly, for the reasons stated herein, the undersigned **recommends the Commissioner's decision be AFFIRMED**.  The undersigned further recommends each party bear its own fees and costs and the Clerk of the Court be directed to enter judgment consistent with this Report and Recommendation.

## IV. Plaintiff's Motion to Reconsider and for Payment of Social Security Benefits

On October 12, 2010, Plaintiff's Motion to Reconsider Order Document 62 and Motion to Expedite Payment of Social Security Benefits with Incorporated Memorandum of Law (Doc. #93, Motion) was filed.  Plaintiff cites to the unpublished case of *Cushman v. Social Security Admin.*, 358 Fed.Appx. 89 (9th Cir. 2009), for the proposition that "fraudulently altering medical records to avoid paying benefits is a violation of the fundamental fairness doctrine or a 5th Amendment Due Process violation" (Doc. #93 at 1). Plaintiff claims the ruling in *Cushman* is on point with this case, as he now alleges "[t]he Commissioner of Social Security fraudulently altered the record so that the Veterans Affairs or Social Security would not have to award benefits by expunging all medical evidence showing that in 1996 [he] was taking the 4 most powerful antibiotics on the marked and expected to die due to infection. . .and by fraudulently stating that [his] condition is not on the List of Impairments" (Doc. #93 at 1-2).  Plaintiff goes on to allege the "ongoing actions of the Commissioner et. al. are clearly, discriminatory, retaliatory and

malicious, a 5th Amendment violation, which entitles [him] to punitive damages" (Doc. #93 at 3).

Plaintiff, who although proceeding *pro se* has been provisionally granted temporary use of the Court's CM/ECF (case management/electronic case filing) system (*see* Doc. #88, Court Order), docketed the instant motion as a first motion for judgment on the pleadings and a second motion to reconsider docket entry number 62.  The Defendant, who received a notice of electronic filing of the instant motion, has not responded.

Plaintiff seeks relief in the form of immediate payment of "all past due Social Security benefits, from 1996 to present," purported lost wages, several million dollars in punitive damages, restoration of his driving privileges, and "restoration" of a twenty year retirement status "as if [he] had worked for the federal government for the past 20 years" (Doc. #93 at 4).

As an initial matter, the Court would note that medical evidence pre-dating the December 28, 2000 decision of the Commissioner of Social Security that denied Plaintiff's November 12, 1999 application for DIB, would have minimal, if any, relevance to the construed appeal of Plaintiff's February 9, 2005 applications for DIB and SSI, which were denied by the decision dated May 17, 2007.  *See, e.g., Carmichael v. Comm'r of Social Security Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (medical opinion evidence that predates the alleged onset date of disability is of limited relevance).  The construed appeal of the December 28, 2000 decision was dismissed as untimely (*see* Doc. #62, Court Order).[19]  Plaintiff's alleged an onset date of disability as June 2, 2001 in the February 9,

---

[19]The period of time relevant to this appeal runs from the date of the last denial for which
(continued...)

2005 applications (Tr.75-77, 486-88).  While the ALJ must consider all the evidence in the record when assessing Plaintiff's claims of disability, 20 C.F.R. § 404.1520(a)(3), it is axiomatic that an ALJ cannot consider that which is not there.   By Plaintiff's own admission, the evidence of what antibiotics Plaintiff took in 1996 were not in the record of his Social Security disability proceedings (Doc. #93 at 1-2).

In *Cushman v. Social Security Admin.*, the court accepted as true that the record on which the ALJ partially relied in finding the plaintiff was not disabled contained "a fraudulently altered note."  *Cushman v. Social Security Admin.*, 175 Fed.Appx. at 862.  No such finding exists in this case.  At most, we now have Plaintiff's unsubstantiated assertion that part of his medical records from 1996, which pre-date his alleged onset date of disability by five years, are missing from the administrative record (*see* Doc. #93 at 1-2). Plaintiff's attempt to apply *Cushman* to this case is misplaced.

As discussed in detail *supra, see* The May 17, 2007 Social Security Disability Appeal, the undersigned agrees with the ALJ's finding that Plaintiff's condition did not meet a Listing at step three in the five step sequential evaluation process utilized by the SSA to determine a claimant's entitlement to DIB or SSI disability payments.   Thus, the undersigned finds Plaintiff's claim that the Commissioner fraudulently stated his condition was not on the "List of Impairments" is wholly without merit.

Although Plaintiff periodically has attempted to bring extraneous matters into this litigation, with respect to the claims raised in the original complaint, Plaintiff has not introduced any new facts to support resurrection of the dismissed claims.  Indeed, Plaintiff

---

[19](...continued)
Plaintiff failed to timely request reconsideration; i.e., April 23, 2003 (*see* Tr. 62).

has merely reiterated that which has already been stated in various parts of the record. The Court has previously addressed and issued its ruling regarding Plaintiff's claims of conspiracy among the State of Florida, the VA, the SSA, and other unnamed government entities.

Plaintiff requests the Court reconsider its Order dismissing the State of Florida from this action and dismissing all counts against Defendant Michael Astrue as the Commissioner of Social Security, except for the construed appeal of the Commissioner's denial decision discussed above (*see generally*, Doc. #93, Motion; Doc. #62, Court Order). Reconsideration of a court's previous order is an extraordinary remedy and, thus, is a power which should be used sparingly. *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F.Supp. 1072, 1072-73 (M.D. Fla. 1993). The Eleventh Circuit has described a motion for reconsideration as falling within the ambit of either Rule 59(e) (motion to alter or amend a judgment) or Rule 60 (b) (motion for relief from judgment). *Region 8 Forest Serv. Timber Purchases Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). In either situation, relief granted from such motion is within "the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." *Id.*

This Court has recognized three grounds for granting reconsideration: 1) an intervening change in controlling law; 2) the availability of new evidence; and 3) the need to correct clear error or manifest injustice. *Reyher v. Equitable Life Assurance Soc'y of the U.S.*, 900 F. Supp. 428, 430 (M.D. Fla. 1995); *Sussman v. Salem, Saxon & Nielsen*, 153 F.R.D. 689, 694 (M.D. Fla. 1994). Upon review of Plaintiff's request for reconsideration,

the undersigned finds Plaintiff has not established a valid ground for reconsideration, and the Court's Order of November 6, 2009 is not clearly erroneous. Thus, to the extent Plaintiff's Motion (Doc. #93) requests reconsideration of docket entry number 62, the referenced Court Order, the motion should be **DENIED**.

Plaintiff also docketed the instant motion as one seeking judgment on the pleadings. "Judgment on the pleadings is proper when no issues of material fact exist and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Barnwell v. Douglas County*, 390 Fed.Appx. 862, 863 (11th Cir. 2010) (quoting *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010). In this case, the Court has not taken judicial notice of any facts. As the Court earlier found, *see supra* Plaintiff's Motion for Partial Summary Judgment, material facts have remained in dispute, despite Plaintiff's assertions to the contrary. (*See also* Doc. #38, R&R; Doc. #39, R&R.) The key issue is whether Plaintiff is entitled to Social Security disability benefits. Plaintiff maintains that he should be awarded the disability benefits and damages sought in this suit as a matter of law. Defendant disputes Plaintiff's contention. Judgment on the pleadings is not appropriate in this instance. To the extent Plaintiff's Motion (Doc. #93) seeks this relief, it should be **DENIED**.

<u>CONCLUSION</u>

In summary, based on the foregoing findings, this Report and Recommendation is respectfully submitted to recommend:

1.      Plaintiff's Motion for Partial Summary Judgment (Doc. #66) **be DENIED**.

2.      Plaintiff's Motion to Admit New and Material Evidence and Remand (Doc. #80) **be DENIED**.

3.      The May 17, 2007 decision of the Commissioner of Social Security to deny Plaintiff's applications for DIB and SSI disability payments **be AFFIRMED**; the construed appeal be dismissed with each party to bear its own costs and fees; and, judgment be entered for Defendant.

4.      Plaintiff's Motion to Reconsider Order Document 62 and Motion to Expedite Payment of Social Security Benefits with Incorporated Memorandum of Law (Doc. #93) **be DENIED**.

5.      This case be closed.

**DONE AND ENTERED** at Jacksonville, Florida this 2nd day of February, 2011.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
*Pro Se* Plaintiff
All counsel of record
Hon. Marcia Morales Howard